Herman H. ANDERSON and Ceclia C. Anderson, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 76–1677.

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1978.

Reuben M. Ginsberg, Donald J. Forman, Roy E. Graham, Dallas, Tex., for petitioners-appellants.

Jonathan S. Cohen, Carolyn R. Just, Gilbert E. Andrews, Act. Chief, App. Sect., Crombie J. D. Garrett, Attys., Tax Div., U.S. Dept. of Justice, Meade Whitaker, Chief Counsel, Internal Revenue Service, Myron C. Baum, Acting Asst. Atty. Gen., Daniel F. Ross, Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before COLEMAN, AINSWORTH and FAY, Circuit Judges.

AINSWORTH, Circuit Judge:

This appeal by Herman H. Anderson and his wife [1] from the United States Tax Court's decision presents the issue of when a cash basis taxpayer may deduct prepaid interest. After moving to California in June 1968, Anderson, a successful real estate builder and investor, was approached by Lytton Savings and Loan Association of Northern California (Lytton) about the possibility of purchasing Adobe Wells Motor Home Park. Several months of negotiations followed. On August 2, 1968, the parties signed a Letter of Intent for the purchase. According to that document, Lytton intended to sell the property for $2,700,000 financed by a twenty-year loan which required prepayment of approximately $500,000, representing interest for approximately thirty months. A more formal agreement was to be executed within twenty-five days during which time the property would not be sold to anyone else. Nonetheless, a contract for Anderson's purchase of the property was not completed until December 27, 1968. During this interim, a second potential buyer made a higher offer for the property and the cost of completing the trailer park also increased. As a result, the price finally agreed upon with Anderson increased from $2,700,000 to $2,995,000. The closing of the transaction and prepayment of interest finally occurred on December 30, 1968.

In 1968 Anderson had income of $652,-894.36. Anderson, a cash basis taxpayer, deducted the entire amount of prepaid interest in the Adobe Wells deal, the sum of $500,000, in that year. Along with other deductions, this resulted in his having a $28,491 net loss for tax purposes.

An IRS audit of Anderson's return resulted in a disallowance of taxpayer's deduction of the entire $500,000 of prepaid interest in 1968 and required Anderson to allocate the prepayment over the taxable years involved in the loan. The result was a tax deficiency for 1968. The IRS determination was in accordance with its Revenue Ruling 68–643, 1968–2 C.B. 76, issued on November 26, 1968. Taxpayer's petition to the Tax Court resulted in an adverse decision and Anderson appealed to this Court.

Anderson is, of course, entitled to a deduction for the $500,000 interest paid on money borrowed to purchase the trailer park since "[t]here shall be allowed as a deduction all interest paid on accrued within in the taxable year on indebtedness." I.R.C. § 163(a). However, the dispute here involves the year or years in which the deduction may be taken. The solution depends on the accounting method used. A cash basis taxpayer would normally be able to deduct interest only in the year paid while an accrual basis taxpayer would be able to deduct interest only when he received the benefits of the prepayment. See I.R.C. § 461(a).[2] Usually a taxpayer may apply his regular accounting method for computing his taxable income and his allowable deductions. See I.R.C. §§ 446(a), 461(a). However, a different method may be compelled if his accounting method does not "clearly reflect income." See I.R.C. § 446(b).[3]

1. Since Ceclia C. Anderson is a party to this proceeding only by virtue of having filed a joint return with her husband, Herman H. Anderson will be referred to as taxpayer.

2. Internal Revenue Code section 461(a) reads:
Sec. 461. GENERAL RULE FOR TAXABLE YEAR OF DEDUCTION.
(a) General Rule.—The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.

3. The relevant portions of Internal Revenue Code section 446 are quoted below:

Sec. 446. GENERAL RULE FOR METHODS OF ACCOUNTING.
(a) General Rule.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.
(b) Exceptions.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income.
(c) Permissible Methods.—Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under

The Internal Revenue Service initially resisted efforts by cash basis taxpayers to deduct the entire prepayment of interest in the year of payment. However, after the decisions in *Fackler v. Commissioner*, 39 B.T.C. 395 (1939), *acq.* 1939–1 C.B. 11, *acq. withdrawn* 1968–3 C.B. 3, and *Court Holding Company v. Commissioner*, 2 T.C. 531 (1943), *acq.* 1943 C.B. 5, *acq. withdrawn* 1968–2 C.B. 3, the Commissioner accepted the position that for interest paid for less than five years in advance, a cash basis taxpayer would have an allowable deduction for the year in which the amount was paid. In 1968, however, the Commissioner changed his policy in this regard and issued a Revenue Ruling which required a cash basis taxpayer to deduct the interest over the period for which it was paid. By its terms the ruling was made effective for prepaid interest payments for a period not in excess of five years made on or after November 26, 1968.[4]

We find the Commissioner's position in Revenue Ruling 68–643 valid as applied to this transaction. This change can be justified on several grounds. Requiring the taxpayer to accrue the prepayment to interest is consistent with the treatment of other prepayments such as prepaid insurance or rent. *See* Asimow, Principle and Prepaid Interest, 16 U.C.L.A.L.Rev. 36, 74–84 (1968). In addition, prepaid interest, particularly in real estate transactions, was becoming a major form of tax avoidance. *See id.* at 37–38. Finally, while the earlier cases had been concerned about the fairness of requiring a taxpayer to change his accounting method with respect to a single item, *see, e. g., Fackler v. Commissioner, supra,* later versions of the Internal Revenue Code explicitly authorized hybrid methods of accounting. *See* I.R.C. § 446(c)(4). Other circuits which have considered the Commissioner's current stance on the deductibility of prepaid interest by a cash basis taxpayer have approved singling out prepaid interest

any of the following methods of accounting—
(1) the cash receipts and disbursements method;
(2) an accrual method;
(3) any other method permitted by this chapter; or
(4) any combination of the foregoing methods permitted under regulations prescribed by the Secretary or his delegate.

4. In relevant part Revenue Ruling 68–643 reads:

In view of certain abuses which have arisen with respect to prepayment of interest by taxpayers using the cash receipts and disbursements method of accounting, the Service has reexamined its position in I.T. 3740. The Service now concludes that the deduction of prepaid interest in the year of payment by a taxpayer employing the cash receipts and disbursements method of accounting may not result in a clear reflection of income for the taxable year of payment. A deduction for interest paid in advance on each indebtedness for a period not in excess of 12 months of the taxable year immediately following the taxable year in which the prepayment is made will be considered on a case by case basis to determine whether a material distortion of income has resulted. Some of the factors to be considered in determining whether the deduction of prepaid interest gives rise to a material distortion of income include but are not limited to the amount of income in the taxable year of payment, the

income of previous taxable years, the amount of prepaid interest, the time of payment, the reason for prepayment, and the existence of a varying rate of interest over the term of the loan. If interest is prepaid for a period extending more than 12 months beyond the end of the current taxable year, the deduction of such prepaid interest in the taxable year of payment will be considered as materially distorting income. Where a material distortion of income has been found to result from the deduction of prepaid interest, the Service will require the taxpayer to change his method of accounting with respect to such prepaid interest in order to allocate it over the taxable years involved.

In view of the foregoing, I.T. 3740 is revoked. However, pursuant to the authority contained in section 7805(b) of the Code, this Revenue Ruling will be applied without retroactive effect to interest prepayments for periods not in excess of five years made prior to November 26, 1968 by taxpayers employing the cash receipts and disbursements method of accounting. This Revenue Ruling also will be applied without retroactive effect to an interest prepayment for a period not in excess of five years made on or after November 26, 1968, by a taxpayer employing the cash receipts and disbursements method of accounting, pursuant to a legal obligation incurred prior to such date to make such prepayment.

for separate accounting treatment. *See Resnik v. Commissioner of Internal Revenue*, 7 Cir., 1977, 555 F.2d 634; *Sandor v. Commissioner of Internal Revenue*, 9 Cir., 1976, 536 F.2d 874; *Burck v. Commissioner of Internal Revenue*, 2 Cir., 1976, 533 F.2d 768.

Further, we find that the validity of Revenue Ruling 68–643 is unimpaired by recent legislation requiring a cash basis taxpayer to treat any prepayment of interest as paid in the period to which the interest is allocable. *See* I.R.C. § 461(g).[5] While conflicting legislative history can be cited, most of the statements in the committee reports accompanying the legislation indicate that

no inference should be drawn concerning the deductibility of prepaid interest paid before the effective dates of the new rule. It is expected that deductions for such prepayments will be determined according to the criteria of present law.

S.Rep.No.94–938, 94th Cong., 2d Sess. 105 (1976), U.S.Code Cong. & Admin.News 1976, p. 3541. Moreover, the taxpayer is incorrect in his contention that the amendment would be unnecessary if Revenue Ruling 68–643 properly interpreted the then existing law. While this legislation controls transactions within the scope of that Ruling, the amended legislation also requires accrual of the interest deductions in situations not covered by Revenue Ruling 68–643. That Revenue Ruling treated prepayments for less than twelve months in advance on a case by case basis. In addition, cases under that Revenue Ruling required a showing that the prepayment of interest materially distorted the taxpayer's income.

*See Burck v. Commissioner, supra*, at 773–74. The amended section 461 now automatically disallows a deduction for any prepayment of interest, even those for less than twelve months, which is properly allocable to another taxable year and without any necessity of showing that income was distorted. Since this new subsection 461(g) extends to transactions beyond the reach of Revenue Ruling 68–643, the validity of that Ruling would not reduce the need for this legislation.

█ The Tax Court correctly applied Revenue Ruling 68–643 to the facts presented here. Only two days of the approximately thirty months for which the interest was paid occurred in the 1968 taxable year. The amount of the prepayment was substantial, $500,000. In fact, if deductible, this prepayment, along with other deductions, would enable the taxpayer to claim a net loss in a year in which he received more than $650,000 of income. "The Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income . . . ." *Commissioner v. Hansen*, 360 U.S. 446, 467, 79 S.Ct. 1270, 1282, 3 L.Ed.2d 1360 (1952). Under this standard, the Tax Court's determination that taking the entire deduction in 1968 under these circumstances had the effect of materially distorting income was correct and should not be upset.

█ The only remaining point is Anderson's allegation that the agreement to purchase the property and to prepay the interest was a binding contract prior to Novem-

---

5. Internal Revenue Code subsection 461(g) reads:

(g) Prepaid interest.—

(1) In general.—If the taxable income of the taxpayer is computed under the cash receipts and disbursements method of accounting, interest paid by the taxpayer which, under regulations prescribed by the Secretary, is properly allocable to any period—

(A) with respect to which the interest represents a charge for the use or forbearance of money, and

(B) which is after the close of the taxable year in which paid,

shall be charged to capital account and shall be treated as paid in the period to which so allocable.

(2) Exception.—This subsection shall not apply to points paid in respect of any indebtedness incurred in connection with the purchase or improvement of, and secured by, the principal residence of the taxpayer to the extent that, under regulations prescribed by the Secretary, such payment of points is an established business practice in the area in which such indebtedness is incurred, and the amount of such payment does not exceed the amount generally charged in such area.

ber 27, 1968 and thus was not covered by Revenue Ruling 68–643. While the parties engaged in negotiations before November 27, the record does not support a finding that a contract was reached prior to December 27, 1968. The only basis for such a finding would be the Letter of Intent dated August 2, 1968.[6] But under California law this document is insufficient for a contract.

> There is no meeting of the minds of the parties while they are merely negotiating as to the terms of the agreement to be entered into. To be final the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement . . . .

*Dillingham v. Dahlgren*, 52 Cal.App. 322, 329, 198 P. 832, 835 (1921). In particular, a binding contract for the sale of property must specify "the seller, the buyer, the price to be paid, the time and means of payment, and the property to be transferred . . . ." *King v. Stanley*, 1948, 32 Cal.2d 584, 197 P.2d 321 (*en banc*).

■ The Letter of Intent fails to comply with these standards. The purchase price, a critical item in a contract, was increased by almost $300,000 between the signing of the Letter and the signing of a final contract. While Anderson contends that the parties agreed that the final price would depend on the costs of completing the project, the Letter of Intent provided no method for determining the price and instead left the matter to future negotiations. The Letter also failed to state any time for the transaction to occur. From the record it does not appear that Lytton could compel Anderson to pay interest for any time prior to the signing of the promissory note in December. Finally, the Letter clearly contemplated the possibility that the transaction would not be consummated since it stated that the Letter was null and void if a later written agreement was not reached and only prohibited the sale of the property to third parties for a period of twenty-five days. The record does not include sufficient evidence of any prior oral contract to support a conclusion that the Tax Court erred in its decision that no contract existed prior to November 27, 1968. Hence, taxation of this transaction is governed by Revenue Ruling 68–643 and the deficiency was properly assessed.

AFFIRMED.

---

**6.** Letter of Intent:

> It is the intent of Lytton Savings and Loan Association of Northern California to sell to Hal H. Anderson, 1650 Borel Place, San Mateo, California, the approximate 75 acre (gross) trailer park in Sunnyvale, on Lawrence Station Road for $2,700,000, with approximately 3 years prepaid interest at 7% (amounting to approximately $500,000) as a down payment, with Lytton Savings and Loan Association making a loan of $2,700,-000, 7%, 20 years, under Section 6705.6 of the Savings and Loan Association Law, with a monthly payment of approximately $20,934 per month when the full operation of 581 pads is completed and the lease is paying on the *whole* project. Mortgage payments prior to full scale operation shall be scaled as reasonably as possible to match the Contract income from the lease. Subject to lease dated August 7, 1967 between Lytton and Brandenburg, et al.
>
> Subject to Lytton Financial Management Approval of the final executed deposit receipt and documents, including possibly financial statements and credit of Hal H. Anderson.
>
> Lytton shall not sell the property to anyone under any circumstances for 25 days after the above date.
>
> Hal H. Anderson intends to buy the above mentioned property for $2,700,000 with $500,000 approximate prepaid interest as roughly outlined above and with the approximate rough figures of Lease Rental per annum as outlined on attached sheet dated February 29, 1968, but updated on August 1, 1968 with handwritten figures.
>
> Subject to the approval of L. A. Marquardt; subject to Marvin Starr's approval as to tax consequences.
>
> Both parties intend to execute a more formal agreement within 25 days, but if such an agreement is not executed for any reason, this letter of intent shall be null and void. If for some reason, Phase II is not built, the purchase price shall be collapsed to $2,240,-000, to include the land in Phase II, and the mortgage reduced likewise. The entire loan amount will, in any case, be structured so that the entire loan will be amortized in a 20 year period, with no balloon payment at the end. If the price is collapsed, the prepaid interest shall still be $500,000, but it shall be stretched out to cover more than 3 years.