**Robert J. and Mildred FRYSINGER,**
**Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.**

**No. 80–7482.**

United States Court of Appeals,
Fifth Circuit.
Unit B

May 22, 1981.

---

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, Tax Division, Dept. of Justice, N. Jerold Cohen, Chief Counsel, IRS, Carleton D. Powell, Karl P. Fryzel, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellant.

Robert C. Walthall, Birmingham, Ala., for petitioners-appellees.

Samuel P. Guyton, Denver, Colo., for amicus curiae.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

RONEY, Circuit Judge:

The sole issue in this federal income tax case is whether the cash method taxpayer [1] is entitled to deduct in taxable year 1975 the cost of cattlefeed purchased in December 1975 for use in a cattlefeeding program in 1976. The Tax Court decided the deduction was permitted under the applicable statutes and regulations and did not result in a material distortion of income, holding the Commissioner abused his discretion in disallowing the deduction. We affirm.

The relevant facts are not in dispute. In 1975 taxpayer, who was then a treasurer for United States Steel Corporation, became interested in buying and selling cattle as an investment. On December 16, 1975, he entered into a cattle management contract with Rimrock Cattle Company under which Rimrock agreed to purchase cattle for taxpayer, raise them to slaughter weight, and sell them for taxpayer's account. Taxpayer was required to purchase the feed for the cattle. Rimrock advised him the price of feed corn was traditionally lowest at the end of the year.

On December 30, 1975, taxpayer purchased 450,000 pounds of corn for $22,230, to be stored in a bonded warehouse subject to delivery at Rimrock's request. In May 1976 Rimrock purchased one pen of cattle (approximately 120 head) for taxpayer, which was sold in October 1976 for a loss. As a result of the decline in market price, Rimrock did not purchase a second pen of cattle for taxpayer in 1976 as contemplated by the contract. Thus, at the close of 1976 taxpayer had 120,000 pounds of corn leftover, which he used in 1977 in a different cattlefeeding operation.

Using the cash receipts and disbursements method of accounting, taxpayer deducted the $22,230 as a farm expense on his 1975 federal tax return, reducing his taxable income by about fifty percent. The

---

1. "Taxpayer" will refer to Robert Frysinger since he alone was a party to the transactions relevant to the case. Mildred Frysinger is a party to this litigation solely because she filed a joint return with her husband in 1975.

Commissioner of Internal Revenue, pursuant to his discretionary authority under Internal Revenue Code (IRC) § 446(b), disallowed the 1975 deduction as not clearly reflecting taxpayer's income and instead allocated the expense to the years in which the feed was consumed. In doing so, he asserted the prepayment did not satisfy the second and third requirements of Rev.Rul. 75–152, 1975–1 Cum.Bull. 144, which sets forth three conditions for the current deduction of prepaid feed costs by a cash method taxpayer: (1) the expenditure must be a payment rather than a deposit; (2) the prepayment must be for a business purpose and not merely for tax avoidance; and (3) the deduction in the year of prepayment must not result in a material distortion of income.[2]

In a suit brought by taxpayer, the Tax Court held the Commissioner's disallowance of the deduction was an abuse of discretion. Applying the reasoning of its en banc decision in Van Raden v. Commissioner, 71 T.C. 1083 (1979), on appeal No. 79–7486 (9th Cir. argued February 11, 1981), the court found the primary purpose for the prepayment was to secure a year's supply of feed at the lowest possible price and that in light of this substantial business purpose no material distortion of income occurred in taking the deduction in the year of outlay under the cash method. The court also rejected the Commissioner's argument that allocation to the year in which the grain was consumed was required by Treas.Reg. 1.461–1(a)(1) because the expenditure created an asset having a useful life extending substantially beyond the close of the taxable year.

Before reaching the merits, we think it important to clarify the issues which are and are not before the Court. First, since the tax year in question is 1975, the new rules adopted by Congress as part of the Tax Reform Act of 1976 regarding feed deductions by "farming syndicates" are not applicable to this case. See IRC § 464. The Commissioner has not argued that the taxpayer in this case was not a "farmer" within the meaning of the regulations, and for that reason not entitled to the special protections granted farmers under the tax laws. The Commissioner does profess he will exercise his section 446(b) authority only to disallow prepaid feed deductions taken by "passive" or "investment" farmers who seek to shelter nonfarm income. Revenue Ruling 75–152 on its face is not so limited, however, and the Commissioner in fact has attempted to use section 446(b) to disallow prepaid feed deductions taken by active farmers in similar situations. See Heinold v. Commissioner, 39 T.C.M. 685 (1979). Under these circumstances, we find no basis for deciding this case differently from any other in which the taxpayer qualifies as a farmer, passive or active.

Second, the Commissioner has not challenged the Tax Court's finding of a legitimate business purpose for the prepayment other than tax avoidance. The amount of feed purchased was intended to be no more than one year's supply. The only issue appealed is whether the court erred in determining that in this case there was no material distortion of income and hence no basis for disallowing the deduction.

Section 446(a) of the Internal Revenue Code provides that taxable income shall be computed under the method of accounting regularly used by the taxpayer in computing his income. Thus, if a taxpayer uses the cash method of accounting to keep his books, he should also use that method for computing taxable income. The freedom to

2. Rev.Rul. 79–229, 1979–2 Cum.Bull. 210, superseded Rev.Rul. 75–152 but did not change its substantive provisions. Although most courts addressing the issue of prepaid feed deductions have applied the test set forth in the revenue ruling, we note the ruling is merely a guideline stating the Commissioner's position regarding such deductions and does not have the force of law. We need not decide the validity of the three-part test because the only issue in this case is whether the Commissioner erred in determining the deduction resulted in a material distortion of income and therefore abused his discretion under IRC § 446(b) in disallowing the deduction as not clearly reflecting income. A thorough discussion of the revenue ruling can be found in Ward, Tax Postponement and the Cash Method Farmer: An Analysis of Revenue Ruling 75–152, 53 Tex.L. Rev. 1119 (1975).

choose a particular accounting method, however, is tempered by the important qualification that "if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the [Commissioner] . . ., does clearly reflect income." IRC § 446(b). This caveat applies not only to the overall plan of accounting, but also to the treatment of any material item in the accounting. *See Anderson v. Commissioner*, 568 F.2d 386, 388–89 (5th Cir. 1978); *Sandor v. Commissioner*, 536 F.2d 874, 875 (9th Cir. 1976).

We recognize the Commissioner's authority under section 446(b) has been given broad scope. The Supreme Court emphasized in *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 532, 99 S.Ct. 773, 781, 58 L.Ed.2d 785 (1979):

> In construing § 446 and its predecessors, the Court has held that "[t]he Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." *Commissioner v. Hansen*, 360 U.S. 446, 467, 79 S.Ct. 1270, 1281, 3 L.Ed.2d 1360 (1959). Since the Commissioner has "[m]uch latitude for discretion," his interpretation of the statute's clear-reflection standard "should not be interfered with unless clearly unlawful." *Lucas v. American Code Co.*, 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538 (1930).

The Commissioner has successfully used his discretionary authority to attack a variety of tax deferral shelters involving current deductions for prepaid expenses by cash method taxpayers, either because they result in a material distortion of income or because they are capital expenditures. *See, e. g., Anderson*, 568 F.2d 386 (prepaid interest); *Cole v. Commissioner*, 586 F.2d 747 (9th Cir. 1978), *cert. denied*, 441 U.S. 924, 99 S.Ct. 2034, 60 L.Ed.2d 398 (1979) (prepaid interest); *University Properties, Inc. v. Commissioner*, 378 F.2d 83 (9th Cir. 1967) (prepaid rent); *Commissioner v. Boylston*

*Market Association*, 131 F.2d 966 (1st Cir. 1942) (prepaid insurance premiums). He has been less successful, however, in challenging prepaid farm deductions, principally because of the special treatment traditionally granted farmers under the tax regulations. *See, e. g., Owens v. Commissioner*, 568 F.2d 1233 (6th Cir. 1977); *Cravens v. Commissioner*, 272 F.2d 895 (10th Cir. 1959); *Van Raden*, 71 T.C. 1083. *But see Clement v. United States*, 580 F.2d 422 (Ct.Cl.1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 455 (1979); *Dunn v. United States*, 468 F.Supp. 991 (S.D.N.Y.1979).

The timing of deductions is governed by IRC § 461, which provides that a deduction should be taken in the proper taxable year under the method of accounting used in computing taxable income. Thus, under the cash method, expense deductions are normally to be taken in the taxable year when paid. Treas.Reg. § 1.461–1(a)(1). The taxpayer may be required to use inventories, however, if necessary to clearly determine his income. IRC § 471. As a practical matter, the regulations require inventories whenever the manufacture, purchase or sale of merchandise is an income-producing factor. Treas.Reg. § 1.471–1.

Notwithstanding these general provisions, however, farmers have been granted special privileges under the regulations with regard to tax accounting for farm expenditures. First, the regulations give farmers the option of using either the cash method or the inventory method. Treas. Reg. § 1.471–6(a).[3] Second, in conjunction with IRC § 162, which allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, the regulations permit farmers to deduct as necessary expenses *all amounts actually expended* in carrying on the business of farming. They specifically provide that the purchase of feed and other costs connected with raising livestock may be treated as expense

---

**3.** Treas.Reg. § 1.471–6(a) provides in part:

A farmer may make his ·return upon an inventory method instead of the cash receipts

and disbursements method. It is optional with the taxpayer which of these methods of accounting is used . . . .

deductions insofar as such costs represent actual outlay. Treas.Reg. § 1.162–12(a).[4]

Thus, the regulations clearly permit the deduction of feed expenses when paid rather than when the feed is actually consumed. These special provisions have been recognized as an historical concession for farmers. In *United States v. Catto*, 384 U.S. 102, 116, 86 S.Ct. 1311, 1319, 16 L.Ed.2d 398 (1966), the Supreme Court noted:

> The sacrifice in accounting accuracy under the cash method represents an historical concession by the Secretary and the Commissioner to provide a unitary and expedient bookkeeping system for farmers and ranchers in need of a simplified accounting procedure.

■ The deduction in this case falls squarely within the provisions allowing farmers to currently deduct feed expenses. The distortion created by the deduction is inherent in the cash method, which for the sake of accounting convenience does not attempt to accurately match expenses with income. The Commissioner by his own regulations has allowed farmers to use the cash method rather than an inventory system and to take current deductions for feed expenses despite the obvious possibility for substantial distortion of income in any one taxable year. *See United States v. Catto*, 384 U.S. at 111 n.15, 86 S.Ct. at 1316 n.15. We therefore agree with the Tax Court in *Van Raden* that although the cash method will usually result in some distortion of income, "[i]f the cash method is consistently utilized and no attempt is made to unreasonably prepay expenses or purchase supplies in advance, the distortion is not material." 71 T.C. at 1104.

In this case, the Tax Court's unchallenged finding was that the December 30th advance purchase was made to obtain the lowest possible price for feed to be used in taxpayer's 1976 cattlefeeding operation. The purchase was consistent with the trend in year-end prices and apparently with established business practice. The holding that the prepayment was reasonable is fully supported by the record. The distortion created by the deduction, in light of the special treatment accorded farmers by the regulations, cannot be considered controlling.

The decision we reach is contrary to that of the Court of Claims in *Clement v. Commissioner*, 580 F.2d 422 (Ct.Cl.1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 455 (1979). There, the court upheld the Commissioner's disallowance of a full deduction for the cost of cattlefeed in the year of prepayment on the ground that the Commissioner's action did not impose an inventory system but rather was consistent with the cash method as defined under the regulations. The court specifically relied on Treas.Reg. 1.461–1(a)(1), which provides that "[i]f an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year when made." The court treated feed expenditures as "period costs," such as interest and rent, which are required to be prorated under the cash method if income distortion would otherwise result.

We think the Court of Claim's reliance on Treas.Reg. § 1.461–1(a)(1) is misplaced and contrary to the historical concession granted to farmers. "Period costs" are costs which arise with respect to time intervals. They are easily allocable to more than one accounting period by dividing the total cost by the number of months over which the asset's useful life extends. Feed expenditures on the other hand are more akin to "product costs," which vary according to the magnitude of the production process and do not lend themselves to easy alloca-

---

4. Treas.Reg. § 1.162–12(a) provides in part:

A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. . . . The purchase of feed and other costs connected with raising livestock may be treated as expense deductions insofar as such costs represent actual outlay, but not including the value of farm produce grown upon the farm or the labor of the taxpayer.

**528**

tion because the rate of consumption does not depend solely upon the passage of time.

To require allocation of feed expenses on the basis of consumption would require the farmer either to inventory the feed at the end of each accounting period or to maintain consumption records. As recognized by the Tax Court in *Van Raden,*

> [c]onsumption records are nothing more than a backhanded inventory method and probably involve a more onerous chore. To impose upon the farmer the duty to maintain consumption records or to inventory the feed is contrary to the historical concession to farmers of not requiring inventories allowed by the Commissioner in his own regulations.

71 T.C. at 1108. Furthermore, Treas.Reg. § 1.162–12(a) explicitly allows farmers to treat all amounts actually expended in farming, and particularly feed costs, as current expenses rather than capital expenditures. This specific regulation must override the more general regulation in this situation.

We emphasize that our holding is limited to the facts in this case. We do not hold the Commissioner can never exercise his discretion under section 446(b) to disallow a prepaid feed deduction by a farmer. Rather we hold that where the taxpayer is a farmer covered by the special provisions allowing farmers to take current deductions for feed expenses, where the prepayment is for a business purpose and not merely tax avoidance, and where it is in line with normal business practice and not unreasonable, the Commissioner cannot use his discretionary authority to vitiate the benefits granted the taxpayer by his own regulations merely because the taxpayer's method may otherwise result in a distortion of income. If "passive farmers" are to be treated differently, the change must come from Congress, as it has under IRC § 464, which now requires certain investment farmers to defer feed expenditure deductions at least until the feed is used or consumed.

AFFIRMED.