DAVID R. CRISP, JR. AND GLORIA J. CRISP, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crisp v. Commissioner
Docket No. 11785-88
United States Tax Court
T.C. Memo 1989-668; 1989 Tax Ct. Memo LEXIS 668; 58 T.C.M. (CCH) 1011; T.C.M. (RIA) 89668; December 26, 1989
Carl Barnhart, for the petitioners. John S. Repsis, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in petitioners' 1984 Federal income tax of $ 46,203 and an addition to that tax under section 6661[1] of $ 11,551. The issues for decision are: (1) whether petitioners improperly included a prepaid feed expense in the adjusted basis of cattle sold in 1984; alternatively, (2) whether petitioners were entitled to deduct that expense in 1984; (3) whether petitioners improperly reported their gain from certain hedging transactions as short-term capital gain; and (4) whether petitioners are subject to the section 6661 addition to tax. *671 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached are incorporated herein by this reference. Petitioners, David (hereinafter petitioner) and Gloria Crisp, resided in Glen Rose, Texas, when they filed the petition in this case. Their timely filed joint Federal income tax return for calendar year 1984 employed the cash receipts and disbursements method of accounting. David Crisp has been a farmer/rancher since 1976. On November 15, 1983, he signed onto a cattle trading program run by the Shultz Cattle Corporation (Shultz). Under their agreement Shultz agreed to advise petitioner on the purchase, maintenance, and ultimate sale of 400 head of cattle. Shultz also agreed to act as bookkeeper. All decision-making power was petitioner's alone. As part of the agreement, Shultz agreed to purchase the cattle on behalf of petitioner once the proper financing was in place. Shultz also helped petitioner locate and retain Republican Valley Cattle Feeders, Inc. (Feedyard), to house, feed, and care for the cattle, and Farmers State Bank and Trust Co. (Farmers), to help finance the transaction. Petitioner financed *672 the purchase transaction as follows: On November 15, 1983, he transferred $ 14,000 to Shultz: its $ 8,000 consulting fee and $ 6,000 toward the purchase of the cattle. All other funds were supplied via a $ 296,000 line of credit set up at Farmers pursuant to a November 15, 1983 loan agreement between that bank and petitioner. One hundred ninety-eight thousand dollars of that loan was nonrecourse, backed only by a security interest in the cattle. The remaining $ 98,000 was recourse, additionally backed by a security interest in a supply of feed to be purchased for the cattle, a hedging account to be created, a second security interest in the cattle, and a $ 56,000 letter of credit from petitioners' personal bank. As part of the loan agreement petitioner was required to hedge at least 50 percent of his cattle. Accordingly, he entered into a hedging agreement with a commodities broker and assigned the hedging account to Farmers. Petitioner also executed a security agreement formally granting Farmers a security interest in the cattle and feed to be purchased. All of these documents were executed in the latter part of calendar year 1983. On December 23, 1983, petitioner purchased *673 both the cattle and a quantity of cattle feed, not in excess of a year's supply. These purchases were made via checks issued by Farmers to the Feedyard on petitioner's line of credit. Petitioner's prepaid feed expense for 1983 totaled $ 100,000. Petitioner bought the entire lot of feed at the market rate as of the date of purchase in a final, nonrefundable transaction. It is common business practice to prepay cattle feed expenses. As part of their bookkeeping duties Shultz provided petitioner with an annual summary of the tax effects of his cattle trading activities. In conformity with Shultz's advice, petitioners deducted the $ 100,000 prepaid feed expense, as well as the $ 8,000 consulting fee on their 1983 joint Federal income tax return. Petitioner had no income from the cattle trading program in 1983. It thus yielded him a $ 108,000 net loss for that year. [2]
In 1984 petitioner sold his cattle, hedging *674 interests, and remaining, unconsumed feed. The feed was sold at the market rate as of the date of sale. Petitioner realized a $ 11,756.56 net gain from the hedging transactions. In 1984 Shultz provided petitioner with both a "Settlement Summary," detailing petitioner's cattle activity for 1983 and 1984, as well as a "1984 Taxable Income Schedule," to help him prepare his 1984 Federal income tax return. On their 1984 joint Federal income tax return petitioners reported the hedging gain as short-term capital gain. They also reported an adjusted basis in the cattle of $ 321,305.36. [3] This basis amount, drawn from Shultz's Settlement Summary and not its 1984 Taxable Income Schedule, included, inter alia, the $ 100,000 prepaid feed expense which petitioners deducted on their 1983 return. The total tax liability shown on their 1984 return was $ 3,359.94. Petitioners received no rebates with regard to that tax. *675 In his notice of deficiency respondent adopted as correct Shultz's 1984 Taxable Income Schedule, which petitioners had not followed in their return. Accordingly, he recalculated petitioners' basis in the cattle to exclude some of the prepaid feed expense and recharacterized petitioners' gain from the hedging transaction as ordinary income. Respondent also determined an addition to petitioners' tax under section 6661, increased their self-employment tax, and adjusted their "two-earner married couple" deduction under section 221. Because these last two items follow directly from the primary deficiencies, they will not be separately discussed. OPINION Respondent asserts, and petitioners do not contest, that petitioner's participation in the Shultz cattle trading program was part of his business of farming. Accordingly, this opinion adopts that premise. Issues (1), (2): Prepaid Feed Expense
The facts of this case give rise to two distinct issues with regard to petitioner's prepaid feed expense: the correctness of petitioners' 1984 treatment of this expense in and of itself, and the correctness of that treatment juxtaposed to any duty of consistency petitioners may *676 have incurred by deducting this expense on their 1983 return. Because our determination of the former issue renders the latter one moot, the latter issue will not be further discussed. Both at trial and on brief the parties treated the prepaid feed expense issue as a question of whether those costs were either properly deductible or includable in basis in 1984. We find that the deductibility issue, though not raised by the pleadings, was nevertheless tried by implied consent of the parties and consequently is at issue in this case. Rule 41(b)(1). We are thus presented with the question of whether the feed expense was properly allocable to 1983 as a deduction, or to 1984, as either a deduction or as part of the cost of goods sold. Only one of these positions can be correct. It is intrinsic to our system of annual accounting that each item of income and expense has a singular, correct treatment under a taxpayer's chosen method of accounting. See Burnet v. Sanford & Brooks Co., 282 U.S. 359 (1931); sec. 1.461-1(a)(3)(i), Income Tax Regs.
Petitioners contend that their treatment of the feed expense on their 1983 return was erroneous: *677 that this expense was only deductible or chargeable to basis in 1984. In contrast, respondent argues that petitioners' 1983 deduction of the feed expense was appropriate and thus any treatment of this item in 1984 is groundless. As farmers, petitioners are entitled to deduct feed costs as ordinary and necessary business expenses. Sec. 162(a); sec. 1.162-12(a), Income Tax Regs. As cash-method taxpayers, petitioners are generally required to take their allowable deductions into account in the taxable year in which paid. Sec. 461(a); sec. 1.461-1(a)(1), Income Tax Regs. Various doctrines, however, either limit or delay the deduction of prepaid feed expenses by cash-method farmers. This Court has distilled these restraints into three interrelated tests which, if passed, allow the deduction of prepaid feed expenses when paid. The tests are: (1) the expenditure must be a payment, not a deposit; (2) the prepayment must have a business purpose; and *678 (3) the deduction of the prepayment cannot result in a material distortion of income. Packard v. Commissioner, 85 T.C. 397, 422-434 (1985). A fourth test is added by the at-risk provisions of section 465. 1. Payment v. Deposit: "A payment occurs only when the taxpayer's money is 'irretrievably out of pocket.'" Keller v. Commissioner, 79 T.C. 7, 29 (1982), affd. 725 F.2d 1173 (8th Cir. 1984), quoting in part Ernst v. Commissioner, 32 T.C. 181, 186 (1959). In the present case petitioner's cattle feeding contract provided that "All payments * * * shall be deemed absolute and unconditional and no part of the purchase price paid for grains and other commodities will be refundable or returnable * * *." We thus find this expenditure to be a payment. Petitioner's subsequent sale of the excess feed does not affect this finding. That sale was wholly unrelated to the initial purchase, as evidenced by the fact that both transactions were conducted at the market rate as of each date of sale. 2. Business Purpose: *679 "A business purpose exists if the prepayment fixes maximum prices for feed, secures an assured feed supply, or secures preferential treatment in anticipation of a feed shortage." Packard v. Commissioner, supra at 429 (emphasis added). Petitioner's prepayment effectively set a singular price for the feed, as well as created an assured supply thereof. Accordingly, we find that petitioner's prepayment had a business purpose. 3. Distortion of Income: Both this Court and the circuit to which this case is appealable have recognized the interrelationship of the distortion of income and business purpose tests. Van Raden v. Commissioner, 71 T.C. 1083, 1106 (1979), affd. 650 F.2d 1046 (9th Cir. 1981); Frysinger v. Commissioner, 645 F.2d 523, 528 (5th Cir. 1981), affg. a Memorandum Opinion of this Court. In Van Raden we stated that "a substantial legitimate business purpose satisfies the distortion of income test." Supra at 1106. In Frysinger the Fifth Circuit stated that "where the taxpayer is a farmer covered by the special provisions allowing *680 farmers to take current deductions for feed expenses, where the prepayment is for a business purpose and not merely tax avoidance, and where it is in line with normal business practice and not unreasonable * * *" this test is satisfied. Supra at 528. These requirements are met in the present case. We accordingly find that petitioners' prepayment expense did not distort their income for 1983. 4. At-Risk Limitation: Although otherwise allowable, petitioners' 1983 prepaid feed expense deduction may still be limited by the at-risk provisions of section 465, applicable to individuals engaged in the activity of farming on a farm-by-farm basis. Sec. 465(a)(1), 465(c)(1)(B), 465(c)(2)(A)(iii). In order for petitioners' 1983 deductions from the cattle trading activity to be fully allowed, their total "loss" from that activity cannot exceed their related "at-risk" amount for the year. Sec. 465(a)(1). Petitioners' loss is defined as the excess of their allowable deductions allocable to the activity, over their income therefrom. Sec. 465(d). Their at-risk amount is comprised of their total cash contributions, the adjusted basis of any property contributed, and recourse debt *681 with respect to the activity. Sec. 465(b)(1). In 1983 petitioner contributed $ 14,000 to the cattle trading activity. He also borrowed $ 298,000, of which $ 98,000 was recourse debt. The collateralization of the recourse debt did not affect petitioner's ultimate personal liability therefor. Petitioners thus had a total of $ 112,000 at risk with regard to their cattle trading activity. [4] Apart from the prepaid feed expense, petitioners have only proven the $ 8,000 consulting fee to be an allowable deduction related to this activity in 1983. Rule 142(a). Subtracting this $ 8,000 from petitioners' total $ 112,000 at-risk amount, they still had $ 104,000 at risk in 1983. Their deduction of the $ 100,000 prepaid feed expense was thus in conformity with the requirements of section 465. We hold accordingly. *682 Since all the requirements for deduction of petitioner's prepaid feed expense were met in 1983, we hold that this item was properly deductible in that year. Accordingly, petitioners' argument that this expense is somehow allocable to 1984 must necessarily fail. We hold for respondent on this issue. Issue (3): Hedging Gain
In his notice of deficiency respondent determined petitioners' gain from the disposition of their hedging interests to be ordinary income to them in 1984. Petitioners bear the burden to prove this determination erroneous. Rule 142(a). Gain from the sale or exchange of property is capital gain, unless the property falls within one of the categories of property excluded from the definition of "capital asset" by section 1221. Sec. 1222. One of the excluded categories is inventory property. Sec. 1221(1). The Supreme Court has stated that "hedging transactions that are an integral part of a business' inventory-purchase system fall within the inventory exclusion of *683 § 1221." Arkansas Best Corp. v. Commissioner, 485 U.S. 212, (1988), 108 S. Ct. 971, 977 (footnote ref. omitted) (construing Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955)). Petitioners have offered no proof that the hedging transactions were not integral to their cattle trading business. In fact, participation in these transactions was a requisite part of the financing arrangement which made that business activity possible. Accordingly, we hold for respondent on this issue. Issue (4): Addition to Tax Under Section 6661
In his notice of deficiency respondent determined that petitioners were liable for an addition to tax under section 6661. Section 6661 imposes an addition to the tax upon taxpayers equal to 25 percent of any underpayment of income tax attributable to an "understatement" which is "substantial." Sec. 6661(a). The term understatement is defined as the excess of the amount of tax required to be shown on a return, over the amount actually shown thereon. Sec. 6661(b)(2)(A). This amount, however, is *684 reduced by any portion thereof which can be traced either to a return position based on "substantial authority" or to a tax treatment which was "adequately disclosed" by the taxpayer. Sec. 6661(b)(2)(B). The legislative history of the substantial authority standard shows that Congress did not intend for it to be satisfied in the case of a return position that is "fairly unlikely to prevail in court upon a complete review of the facts and authorities." H. Rept. 97-760 (Conf.) at 575 (1982), 1982-2 C.B. 600, 650. See section 1.6661-3(a)(2), Income Tax Regs. Having conducted such a review of petitioners' disputed 1984 return positions we find that these positions were not based in substantial authority, as that term was defined by Congress. Neither did petitioners adequately disclose their treatment of these items. Adequate disclosure must be made on a return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Petitioners attached no statement to their return. As to disclosure on the return the regulations provide that the Commissioner may by revenue procedure prescribe the circumstances in which information provided on *685 the return in accordance with the applicable forms and instructions will be adequate disclosure. Sec. 1.6661-4(c), Income Tax Regs. Pursuant to this authority respondent issued Rev. Proc. 85-19, 1985-1 C.B. 520, listing contexts in which entries on tax returns filed in 1985 constitute adequate disclosure. The present situation is not listed in that revenue procedure. Accordingly, petitioners did not adequately disclose their tax treatment of the disputed items on their 1984 return. As a result, the entire deficiency determined by respondent constitutes an understatement under section 6661(b)(2). For the 25 percent addition to apply, however, this understatement must be substantial. Sec. 6661(a). To be substantial a noncorporate taxpayer's understatement must exceed the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioners' understatement satisfies this requirement. Accordingly, we hold for respondent on this issue as well. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code, as in effect for the year in issue, and all rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. Schedule F of petitioners' 1983 joint Federal income tax return lists additional farm-related expenses. Petitioners have, however, offered insufficient proof either to substantiate these expenses or to prove that they were related to the cattle trading program.↩
3. In fact, Schedule F of petitioners' 1984 joint Federal income tax return lists $ 32,305.36 as the cattle's adjusted basis. However, as petitioners' calculation of their net loss regarding the cattle shows, this is a typographical error, and the intended amount was $ 321,305.36.↩
4. Petitioners contend that incurrence of the recourse debt was somehow an interested or related-party transaction within the meaning of sec. 465(b)(3)(A). We find no merit to this claim based on the record before us. We similarly dismiss petitioners' argument that their correct at-risk amount must not include the portion of their cash investment which was spent on the cattle. See sec. 465(b)(1)(A).↩