COMMISSIONER OF INTERNAL REVENUE, Petitioner-Appellant,

v.

Kenneth H., Susan L., Fred F., and Corinne B. VAN RADEN, Respondents-Appellees.

No. 79–7486.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 11, 1981.

Decided July 13, 1981.

Karl P. Fryzel, Tax Court, Dept. of Justice, Washington, D. C., for petitioner-appellant.

Alan H. Cooper, Dallas, Tex., argued, for respondents-appellees; Cyril David Kasmir, Kasmir, Willingham & Krage, Dallas, Tex., on brief.

Before FERGUSON and REINHARDT, Circuit Judges, and BONSAL,* District Judge.

REINHARDT, Circuit Judge:

The Commissioner of Internal Revenue (Commissioner) issued notices of deficiency against the Van Radens showing $206,539 additional personal income tax due for calendar year 1972. The deficiency notices were based on a determination that the deduction of prepaid cattle feed expense in 1972 constituted a material distortion of income. *See* I.R.C. § 446(b). The Tax Court held that the deduction did not result in a distortion of income and set aside the deficiencies. We affirm, although not for the reasons stated by the Tax Court.

## I. INTRODUCTION

In July of 1972, Kenneth and Fred Van Raden and their wives sold corporate stock and realized long-term capital gains totalling $4,636,959. On December 26 of that year, the Van Radens invested $300,000 in Western Trio-VR, a limited partnership engaged in cattle feeding. On the same day, the partnership purchased a one-year supply of feed corn and silage for $360,400, purchased 149 head of cattle for $56,673, and borrowed $1,688,900 secured by the livestock, feed, and other assets.

None of the feed purchased in December 1972 was consumed during that year. Almost all of the feed was consumed during 1973 (98 percent of the corn and 91 percent of the silage, equalling 98 percent of the original value). Although the partnership was initially intended to operate for three years, it began to suffer losses in 1973 and scaled down its operations. In December 1973, it purchased only $156,305 of feed. The partnership ceased doing business in June 1974 and was dissolved in December of that year.

In its 1972 partnership tax return, Western Trio-VR, utilizing a cash method of accounting, claimed a deduction of $360,400 for the December 1972 feed purchase. Because the partnership had no income in 1972, this deduction constituted a net operating loss. Pursuant to the partnership agreement, this loss was allocated equally between the two Van Raden families. The loss was passed through to the Van Radens on their individual tax returns and offset against their other income.

The Commissioner determined that the partnership's deduction in 1972 of the cost of feed consumed in 1973 and 1974 constituted a material distortion of income and issued notices of deficiency totalling $206,539. The Van Radens filed timely petitions in the Tax Court seeking a redetermination of the deficiencies. The Tax Court found for the Van Radens, *Van Raden v. Commissioner*, 71 T.C. 1083 (1979), and the Commissioner appeals.

---

* The Honorable Dudley B. Bonsal, Senior United States District Judge, Southern District of New York, sitting by designation.

## II. *THE STATUTORY FRAMEWORK*

I.R.C. § 446(a) provides that "[t]axable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." Treas.Reg. § 1.471–6(a) provides that "[a] farmer may make his return upon an inventory method instead of the cash receipts and disbursements method. It is optional with the farmer which of those methods is used...."[1] Western Trio-VR used the cash method of accounting.

A farmer is generally entitled to treat the cost of feed as a deductible expense. Treas.Reg. § 1.162–12(a). The timing of deductions is normally governed by the taxpayer's method of accounting. I.R.C. § 461. Treas.Reg. § 1.461–1(a)(1) provides that a cash basis taxpayer should generally take allowable deductions in the year in which the expense is paid. However, where "an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year," the taxpayer must prorate the expense deduction over the useful life of the asset. *Id.*

I.R.C. § 446(b) allows the Commissioner to override the taxpayer's choice of accounting method where the taxpayer's method does not clearly reflect income:

> If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

Section 446(b) grants the Commissioner broad discretion to require the use of a different accounting method.

Under the authority of I.R.C. § 461, which governs the timing of deductions, the Commissioner has issued Rev.Rul. 75–152, 1975–1 Cum.Bull. 144, which indicates the proper taxable year in which a cattle farmer using the cash method of accounting may deduct the cost of cattle feed to be consumed in a following taxable year.[2] The ruling allows a cash basis farmer to deduct the cost of feed to be consumed in a following year in the year of payment only if the following test is met:

> *First*, the expenditure must be a payment for the purchase of feed rather than a mere deposit; *second*, the prepayment must be made for a business purpose and not merely for tax avoidance; and *third*, the deduction of such costs in the taxable year of prepayment must not result in a material distortion of income.

If the test is not met, the Commissioner allows the deduction "over the taxable years in which the feed is consumed by the taxpayer's livestock." The first two parts of the test are consistent with the definition of an ordinary and necessary business expense. I.R.C. § 162; Treas.Reg. § 1.162–1(a). The third part of the test is based on section 446(b), which allows the Commissioner to require a different accounting

---

1. Ordinarily, a taxpayer that produces items for sale must employ inventory accounting, whether the taxpayer is on a cash or accrual basis. *See* I.R.C. § 471; *United States v. Catto*, 384 U.S. 102, 109–110, 86 S.Ct. 1311, 1315, 16 L.Ed.2d 398 (1966); Ward, *Tax Postponement and the Cash Method Farmer: An Analysis of Revenue Ruling 75–152*, 53 Texas L.Rev. 1119, 1146–51 (1975) [hereinafter cited as Ward]. Under inventory accounting, the taxpayer may deduct the cost of materials used to produce the product only when the product is sold. *See Catto*, 384 U.S. at 109–110, 86 S.Ct. at 1315; Ward, 53 Texas L.Rev. at 1146–48. Under this general principle, a cattle feeding company would be permitted to deduct the cost of feed only as the cattle that consume the feed are sold. *See id.*

In 1919, however, regulations were promulgated that authorized farmers to use a simplified method of accounting. This "historical concession" permitted farmers to use a pure cash method rather than inventory accounting and to deduct feed costs as a current expense. *See Catto*, 384 U.S. at 110–11 and n.15, 86 S.Ct. at 1315 and 1316. These regulations were substantially identical to Treas.Reg. §§ 1.471–6(a) and 1.162–12(a), in effect in 1972.

2. Rev.Rul. 75–152 has been superseded by Rev. Rul. 79–229, 1979–2 Cum.Bull. 210. This later revenue ruling is not substantially different from the earlier one. Neither party contends that the later ruling is applicable.

method if the taxpayer's method results in a material distortion of income. In the portion of the ruling relating to the third part of the test, the Commissioner applies Treas.Reg. § 1.461–1(a)(1) pursuant to his authority under section 446(b). Treas.Reg. § 1.461–1(a)(1) provides that "[i]f an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year in which made."

The Commissioner determined that Western Trio-VR's deduction of cattle feed expense in the year of purchase resulted in a material distortion of income. He invoked section 446(b) for the purpose of applying Treas.Reg. § 1.461–1(a)(1). He then concluded that the feed expense must be deducted in the years of consumption.

## III. THE TAX COURT DECISION

The Tax Court analyzed the issue under Rev.Rul. 75–152. It was not disputed that the 1972 feed expenditure was a payment rather than a deposit, and the Commissioner does not challenge the finding of the Tax Court that the prepayment was motivated by a genuine business purpose. The Commissioner challenges only the Tax Court's finding with respect to the third test under Rev.Rul. 75–152, that the deduction did not result in a material distortion of income.

In concluding that the Commissioner abused his discretion under section 446(b) because the deduction did not result in a material distortion of income, the Tax Court made the following specific findings: (1) the amount of feed purchased was calculated to satisfy the partnership's needs for one year; (2) the partnership purchased the feed in December not for the purpose of tax avoidance, but because in past years prices had generally been lower in December than in the early months of the following year; (3) it had been the consistent practice of the general partner in his other cattle feeding businesses to purchase a one-year supply of grain each December; and (4) in the years it was in business, Western Trio-VR consistently purchased each December sufficient feed to meet its expected needs for the next year.

The Tax Court also found that distortion of income should be analyzed on the partnership level. Therefore, in assessing whether the deduction of feed expense constituted a material distortion of income, the Tax Court did not consider the relationship between the timing or effect of the Van Radens' investment in the limited partnership and the large capital gain they individually recognized in 1972.[3] The Commissioner does not challenge this part of the Tax Court's opinion.

## IV. ANALYSIS

The Commissioner asserts that there is a material distortion of income resulting from the partnership's use of the cash method of accounting and that he has the authority under section 446(b) to change that method of accounting. The change he seeks is the application of Treas.Reg. § 1.461–1(a)(1) and specifically that portion which requires proration of the deduction if "the expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year...."[4] The Commissioner contends that application of Treas.Reg. § 1.461–

---

**3.** Congress has taken steps to eliminate much of the tax advantage of prepayment of feed expenses. The Tax Reform Act of 1976 provides that "farming syndicates" may deduct the cost of feed only in the year consumed. "Farming syndicates" include, *inter alia*, limited partnerships in which more than 35% of losses are allocated to limited partners. The Act does not apply to the present case, however, because it is effective only for tax years beginning after December 31, 1975. 26 U.S.C. § 464.

**4.** In his brief, the Commissioner stated:
This latter regulation [1.461–1(a)(1)] provides that any expenditure of a cash basis taxpayer that creates an asset with a useful life extending substantially beyond the end of the taxable year can be deducted only in an allocated manner in each tax year in which it is used. This provision applies squarely to the feed here.

1(a)(1) requires proration here. We disagree with that contention.

We need not reach the questions of the Commissioner's power under section 446(b) or the existence of a material distortion of income.[5] For, under the rule followed in this circuit, application of Treas.Reg. § 1.461–1(a)(1) to the expenditure involved leads to the result reached by the taxpayer and the Tax Court, and not the result sought by the Commissioner. Thus, the Tax Court's decision must be affirmed.

In *Zaninovich v. Commissioner*, 616 F.2d 429 (9th Cir. 1980), we considered the application of Treas.Reg. 1.461–1(a)(1) to prepaid rent expense. We held that under that regulation a taxpayer who paid his rent for the period from December 1, 1973 through November 30, 1974 on December 20, 1973 was entitled to deduct the entire rental payment on his 1973 tax return. In *Zaninovich* we adopted a "one-year rule" to distinguish between currently deductible expenses and capital expenditures having a useful life "substantially beyond" the close of the taxable year. *Id.* at 432. The "one-year rule" allows a full deduction in the year of payment where an expenditure creates an asset having a useful life of one year or less. *Id.*

We do not believe there is any legitimate basis for distinguishing feed payments from rental payments for the purposes of the "one-year rule." Moreover, an argument exists for applying that rule to feed payments which is not applicable in the case of rental payments. Treas.Reg. § 1.471–6(a) represents an historical concession to farmers which allows them to use the cash method of accounting.[6] One of the major purposes of allowing farmers to use the cash method was to simplify their record-keeping requirements. *See United States v. Catto*, 384 U.S. 102, 111 n.15, 86 S.Ct. 1311, 1316, 16 L.Ed.2d 398 (1966); Ward, *Tax Postponement and the Cash Method Farmer: An Analysis of Revenue Ruling 75–152*, 53 Texas L.Rev. 1119, 1148–49 (1975). Proration of feed expenses, unlike rental payments, requires the maintenance of consumption records. We hold that the "one-year rule" in *Zaninovich* applies to the prepayment of feed expense.

In the present case, substantially all of the feed purchased was consumed within the one-year period (98 percent of the corn and 91 percent of the silage, representing 98 percent of the original value). In light of the Tax Court's uncontested finding that the feed purchased was calculated to meet the needs of the partnership for one year, and the insignificant amount of feed remaining at the end of the year, we hold that the extent to which the useful life of the feed purchase exceeded the one-year period was *de minimis*. *See Cravens v. Commissioner*, 272 F.2d 895, 899 (10th Cir. 1959).[7]

---

5. The Van Radens argue that the Commissioner may not require the proration of feed expense under § 446(b) and that Rev.Rul. 75–152 is invalid. They contend that Treas.Reg. §§ 1.162–12(a) and 1.471–6(a), which authorize farmers to claim current deductions for feed expenses and make inventory accounting optional for farmers, have the force of statute under the legislative reenactment doctrine. *See Catto*, 384 U.S. at 114–15, 86 S.Ct. at 1318–19. They further contend that Rev.Rul. 75–152 in essence requires farmers to adopt inventory accounting in violation of Treas.Reg. § 1.471–6(a), and that § 446(b) may not be applied to farmers choosing the cash method. *But see Clement v. United States*, 580 F.2d 422, 432–33 (Ct.Cl.1978); *Cattle Feeders Tax Comm. v. Shultz*, 504 F.2d 462, 465–66 (10th Cir. 1974); *Dunn v. United States*, 468 F.Supp. 991, 993–94 (S.D.N.Y.1979). Whatever the merits of the Van Radens' arguments, we need not reach them here.

6. *See* note 1 *supra.*

7. *See also Zaninovich*, 616 F.2d at 432 n.6:

While the "one-year rule" is strictly applied to allow a full deduction in the year of payment where an expenditure creates an asset having a useful life beyond the taxable year of twelve months or less, it is not applied in the same manner in the other direction. Where an expenditure creates an asset having a useful life beyond the taxable year of more than twelve months, the "one-year rule" has been used as a guidepost only, and not as a rigid rule requiring automatic capitalization of every expenditure which creates an asset having a useful life in excess of one year.

Under the *Zaninovich* "one-year rule," Western Trio-VR's deduction of feed expense in the year of purchase satisfied the requirements of Treas.Reg. § 1.461–1(a)(1). The decision of the Tax Court is AFFIRMED solely for the reasons stated herein.[8]

**8.** Although we base our decision solely on the ground that in this circuit the *Zaninovich* "one-year rule" prevents the Commissioner from using Treas.Reg. § 1.461–1(a)(1) to require proration of the deduction, we note that in a case involving substantially similar facts the Fifth Circuit has recently adopted the reasoning of the Tax Court in its *Van Raden* opinion. *See* *Frysinger v. Commissioner*, 645 F.2d 523 (5th Cir. 1981).