Stephen A. KELLER and Ethel L. Keller, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 82–2486.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1983.

Decided Feb. 1, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, George L. Hastings, Jr., Tax Division, Dept. of Justice, Washington, D.C., for appellee.

Tom G. Parrott, Kornfeld, Satterfield, McMillin, Harmon, Phillips & Upp, Oklahoma City, Okl., for appellants.

Before JOHN R. GIBSON, FAGG, Circuit Judges, and WOODS,* District Judge.

JOHN R. GIBSON, Circuit Judge.

This case presents the issue of whether intangible drilling and development costs (IDC) prepaid by taxpayer Stephen A. Keller in 1973 are deductible in that year rather than in later years when the goods and services are rendered. The issue essentially

---

* The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

concerns timing; the deductibility of the IDC is not in dispute. In resolving this issue the tax court, sitting as a whole, weighed three considerations: (1) whether the expenditure was a payment or a deposit, (2) whether the prepayment was made for a business purpose or for tax avoidance, and (3) whether the prepayment resulted in a material distortion of income. The tax court concluded that Keller improperly deducted certain prepaid IDC in 1973. We affirm.

Taxpayer[1] in 1973 invested $50,000 in a limited drilling partnership through Amarex, Inc., and its wholly-owned subsidiary, Amarex Funds, Inc. Both corporations were general partners of the Amarex Drilling Program, Ltd.—72/73 (the Program Partnership), a limited partnership in which taxpayer and investors became limited partners. Funds invested in the Program Partnership were reinvested in four drilling partnerships. The share purchased by taxpayer was allocated to Amarex Drilling Partnership No. 72/73–D (the Drilling Partnership).

The issue of tax liability in this case centers around the activities of the Drilling Partnership during late 1973. Keller purchased his subscription on July 31, 1973. The Drilling Partnership was formed on August 14, 1973, and commenced operation shortly thereafter. Ninety-eight investors, as limited partners of the Program Partnership, invested a total of $1,372,000 in the Drilling Partnership. The Drilling Partnership began drilling in August, 1973, and completed 62 wells that year. Thereafter it completed 94 wells in 1974 and 25 wells after December 31, 1974. Of 182 wells altogether, located in fourteen states, 27 were oil wells, 40 were gas wells, one was an oil and gas well, and 114 were dry wells.

Both the Program Partnership and the Drilling Partnership reported their incomes on a calendar year basis, using the cash receipts and disbursement method of accounting. On its 1973 partnership tax return, the Drilling Partnership reported an ordinary loss of $1,373,257. The Program Partnership reported a $1,372,000 ordinary loss on its 1973 partnership tax return as its distributive share of the Drilling Partnership's loss. Keller, in turn, deducted a $50,000 ordinary loss on his 1973 income tax return as his distributive share of the Program Partnership's loss.

Pursuant to 26 U.S.C. § 263(c) (Supp. V 1981) and Treas.Reg. § 1.612–4(a), the Drilling Partnership had elected to "expense," or currently deduct, its intangible drilling and development costs (IDC) on its 1973 partnership tax return. The Commissioner of Internal Revenue, however, disallowed the Drilling Partnership's deductions as to IDC prepaid in 1973 for drilling services not to be rendered until after 1973. Accordingly, the Commissioner determined Keller's distributive share of the partnership's loss to be $21,595 instead of $50,000, and notified Keller of a $14,202 tax deficiency.

The prepaid IDC in question took several forms. In December of 1973, the Drilling Partnership transferred $487,869.33 to various drilling contractors and service companies pursuant to 330 contracts concerning 87 proposed oil and gas wells. These contracts were of three types: (1) footage and daywork drilling contracts, (2) turnkey drilling contracts, and (3) third party well servicing contracts. The Drilling Partnership also transferred $142,691.38 to Amarex Funds as prepaid "well charges" under the drilling agreement. The Commissioner disallowed 1973 deductions for all of these prepayments of IDC.

The tax court upheld the Commissioner's determinations of nondeductibility in 1973, except for those prepayments made pursuant to turnkey drilling contracts. It applied a variation of a three-part test that the Commissioner had previously proposed in the context of prepaid livestock feed. As postulated by the Commissioner, the test required that

---

1. "Taxpayer" refers to Stephen A. Keller. Ethel L. Keller is a party to this action solely because she filed a joint income tax return with her husband.

*[f]irst,* the expenditure must be a payment ... rather than a mere deposit; *second,* the prepayment must be made for a business purpose and not merely for tax avoidance; and *third,* the deduction of such costs in the taxable year of prepayment must not result in a material distortion of income.

Rev.Rul. 75–152, 1975–1 C.B. 144; Rev.Rul. 79–229, 1979–2 C.B. 210. In *Van Raden v. Commissioner,* 71 T.C. 1083, 1096 (1979), *aff'd,* 650 F.2d 1046 (9th Cir.1981), the tax court adopted the test but declined to consider the second part of the test as an independent requirement; a legitimate business purpose could satisfy the distortion of income requirement. The tax court in the present case applied the same "two-part variation" of the proposed three-part test to the deductions of prepaid IDC taken by the Drilling Partnership and Keller.[2]

The tax court found that prepayments made under the footage and daywork contracts and the third party well servicing contracts were refundable deposits, not payments. It further found no convincing business purpose for such prepayments. (TC at 47) The tax court determined that the prepayment of "well charges" to Amarex Funds, regardless of whether they constituted payments or deposits, could not be deducted in 1973 because to do so would materially distort the partnership's income; no business purpose existed for prepaying the "well charges." (TC at 59–60) It found that IDC prepaid under turnkey contracts, however, were deductible in 1973. Such prepayments could not be refunded, hence they were payments, not deposits. (TC at 62) The tax court further found that turnkey contracts locked in prices, thus serving a valid business purpose, and therefore did not materially distort income because the partnership "effectively got its bargained for benefit in the year of payment." (TC at 65)

I.

Taxpayer appeals the tax court's finding that prepaid IDC (1) under the footage and daywork contracts, (2) under the third party well servicing contracts, and (3) as "well charges" were not deductible in 1973.[3] Specifically, taxpayer contends that the three-part test relied upon by the tax court does not properly apply to the timing of a deduction for prepaid IDC. None of the courts of appeals has passed upon this issue.

The Commissioner initiated the three-part test in the context of a cash-method taxpayer's deduction of prepaid livestock feed. Rev.Rul. 75–152, 1975–1 C.B. 144; Rev.Rul. 79–229, 1979–2 C.B. 210. Observing that these Revenue Rulings merely represented the Commissioner's legal position and did not carry the force of law, the tax court nonetheless adopted a variation of the three-part test for prepaid livestock feed in *Van Raden, supra.* The court modified the proposed three-part test by considering the second factor, business purpose, only to the extent that it bore upon the third factor, material distortion of income. It found that a substantial business purpose could satisfy the distortion of income test, 71 T.C. at 1106, and concluded that the taxpayers satisfied all three requirements. *See also Haynes v. Commissioner,* 38 T.C.M. (CCH) 950 (1979) (current deductibility determined on material distortion factor); *Smith v. Commissioner,* 35 T.C.M. (CCH) 1246 (1976) (current deductibility determined on refundability factor); *Owens v. Commissioner,* 64 T.C. 1 (1975) (same).

The courts of appeals have considered the three-part test in prepaid livestock feed cases but have expressly withheld judgment as to its undivided applicability. In *Clem-*

---

**2.** Because Keller was a limited partner in the Program Partnership, which in turn was a limited partner of the Drilling Partnership, the timing of Keller's deductions is determined by the timing of the Drilling Partnership's deductions.

**3.** The Commissioner does not challenge the tax court's finding that prepaid IDC pursuant to turnkey drilling contracts were deductible in 1973. Furthermore, taxpayer does not appeal the tax court's decision to uphold the Commissioner's disallowance of the Drilling Partnership's claimed deduction of $137,200 as a management fee paid to Amarex Funds.

ent v. United States, 217 Ct.Cl. 495, 580 F.2d 422 (Ct.Cl.1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 455 (1979), the Court of Claims denied a current deduction for prepaid livestock feed solely on the basis of the resulting material distortion of income, i.e., the third factor of the three-part test. The court did not need to consider the first factor of the test because the government conceded that the prepayment was a payment, not a deposit. 580 F.2d at 424 n. 1. Discerning an adequate business purpose for the prepayment from the totality of the evidence, the court further declined to decide whether the second factor of the test, a business purpose, was a requirement for deductibility. Id. at 427–29.

Likewise, the Fifth Circuit in Frysinger v. Commissioner, 645 F.2d 523 (5th Cir. 1981), did not need to decide the validity of the entire three-part test because the sole issue raised was whether the Commissioner erred in determining that the deduction for prepaid livestock feed resulted in a material distortion of income. Id. at 525 n. 2. The Ninth Circuit in Commissioner v. Van Raden, 650 F.2d 1046 (9th Cir.1981), avoided passing upon the validity of the three-part test altogether, even though the tax court had adopted it.[4]

In the present case, the Commissioner argues that the three-part test is not confined to the prepaid feed context. The tax court agreed that the modified version of the three-part test that it adopted in Van Raden was applicable to prepaid IDC. (TC at 34) Taxpayer, however, vehemently contends that while the statutory provisions underlying the three-part test may apply to prepaid livestock feed, they do not apply to prepaid IDC, hence neither does the three-part test.

Taxpayer's argument, as well as Judge Goffe's concurring and dissenting opinion in the tax court, tend to compartmentalize the issue before us. Revenue Rulings 75–152 and 79–229 specifically address the cattle feed situation. In Owens v. Commissioner, 64 T.C. 1, 17 (1975), the tax court considered treatment of prepaid cattle feed to be "sui generis," and we observed some ten years ago in Mann v. Commissioner, 483 F.2d, 673, 676 (8th Cir.1973), that "[t]here is clearly no common thread or governing principle which rationalizes and renders predictable the results concerning deductibility of advance payments in general." Strong policy reasons support the particular treatment accorded cattle feed. Somewhat different policy reasons, as well as congressional action, support the favored treatment of IDC. Yet, as the tax court concluded, these different policies do not mandate a different frame of analysis for IDC. We believe it is appropriate to consider these three factors to determine allowable timing for deduction of IDC payments; for this purpose we do not believe such payments are that different from payments for cattle feed. The basic question is whether policies of favored tax treatment also permit a taxpayer to manipulate and accelerate deductions by prepaying expenses. We will examine each part of the three-part test in detail.

A. The first part of the test, which requires that the expenditure be a payment rather than a refundable deposit, stems from 26 U.S.C. § 162(a) (1976 & Supp. V 1981) which allows taxpayers to deduct "all the ordinary and necessary ex-

4. Instead, the Ninth Circuit affirmed the tax court by extending the "one-year rule," which had previously been applied to prepaid rent, to prepaid livestock feed. The "one-year rule," an interpretation of Treas.Reg. § 1.461–1(a)(1), permits a full deduction in the year of prepayment if the expenditure creates an asset having a useful life of one year or less. Treas.Reg. § 1.461–1(a)(1) sets forth the general rule that an allowable deduction by a cash basis taxpayer may be taken in the taxable year in which paid. It further provides, however, that "[i]f an expenditure results in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year, such an expenditure may not be deductible, or may be deductible only in part, for the taxable year in which made." The parties have not raised, and we do not consider, the issue of whether the "one-year rule" should govern the timing of a prepaid IDC deduction. For a discussion of the applicability of the "one-year rule" to prepaid IDC, see Klueger, Deductibility of "Prepaid" Intangible Drilling and Development Costs, 30 Oil & Gas Tax Q. 431, 440–41 (March 1982).

penses *paid or incurred* during the taxable year in carrying on any trade or business...." (emphasis supplied). A cash basis taxpayer must actually pay or incur the expense during the taxable year to deduct it under Section 162(a). The taxpayer must part with the money "irretrievably." *Ernst v. Commissioner*, 32 T.C. 181, 186 (1959). If a taxpayer retains unilateral power to regain the funds or to otherwise redirect their use, the transfer is deemed a "deposit" rather than a payment, and a deduction may not be taken until the funds are actually used for the targeted expense. *Schenk v. Commissioner*, 686 F.2d 315, 319 (5th Cir.1982) (where farmer retained unilateral power to apply fertilizer prepayment to entirely different products far into the future, prepayment was nondeductible deposit); *Mann v. Commissioner*, 483 F.2d 673, 678 (8th Cir.1973) (key to current deductibility is refundability).

Taxpayer argues that 26 U.S.C. § 263(c) and its corresponding regulations preclude the application of Section 162(a) in the context of prepaid IDC. Section 263(c) grants taxpayers the option to "expense" IDC, which would otherwise be treated as capital expenditures.[5] Taxpayer contends that Section 162(a) does not apply to IDC because IDC are capital expenditures. As such, taxpayer argues, they are governed solely by Section 263 and regulations thereunder, not by Section 162, which applies to "ordinary and necessary business expenses." Judge Goffe, who dissented and concurred in the tax court opinion, echoed taxpayer's contention.

■ We disagree. While IDC are capital expenditures and would normally be

treated as such but for the option granted by Section 263(c), exercising the option to "expense" IDC calls into play the procedural rules governing "expensed" items. *See* Klueger, *Deductibility of "Prepaid" Intangible Drilling and Development Costs*, 30 Oil & Gas Tax Q. 431, 439 (March 1982). Nothing in the language of Section 263(c) or its legislative history suggests that Congress intended the timing of a deduction for "expensed" IDC to be determined in any way other than as a business expense.[6] *See* H.R.Rep. No. 761, 79th Cong., 1st Sess. (1945). Indeed, the language of Treas.Reg. § 1.612–4(d), which prescribes the manner in which IDC is to be deducted, suggests that the timing considerations applicable in the context of ordinary and necessary business expenses were intended to apply to IDC: "The option ... to charge intangible drilling and development costs to expense may be exercised by claiming intangible drilling and development costs as a deduction on the taxpayer's return for the first taxable year in which the taxpayer *pays or incurs* such costs...." (emphasis supplied). Such language, reiterated in Treas. Reg. § 1.612–4(e) as well, directly parallels that in Section 162(a), which allows the deduction of "all the ordinary and necessary expenses *paid or incurred* during the taxable year...." (emphasis supplied). Moreover, the requirement that prepaid IDC be an irretrievable payment rather than a refundable deposit is consistent with the goal of Section 263(c): to spur actual exploratory drilling.

■ B. The second requirement of the three-part test, that the prepayment be

---

5. Section 263(c) provides in part:

Notwithstanding subsection (a), regulations shall be prescribed by the Secretary under this subtitle corresponding to the regulations which granted the option to deduct as expenses intangible drilling development costs in the case of oil and gas wells and which were recognized and approved by the Congress in House Concurrent Resolution 50, Seventy-ninth Congress.

Accordingly, Treas.Reg. § 1.612–4(a) states: "[I]ntangible drilling and development costs incurred by an operator ... in the development

of oil and gas properties may at his option be chargeable to capital or to expense."

6. Even before Congress enacted Section 263(c), Treasury Regulations permitted IDC to be expensed instead of capitalized. The legislative history indicates that Congress long believed those Treasury Regulations to be valid under Code provisions prescribing deductions for ordinary and necessary business expenses. Congress enacted Section 263(c) to dispel any doubt as to the authority behind the IDC expense option. H.R.Rep. No. 761, 79th Cong., 1st Sess. (1945).

for a substantial business purpose and not merely for tax avoidance, also stems from 26 U.S.C. § 162(a). Unless a business purpose requires a prepayment to be made in a certain year, the prepayment cannot fairly be characterized as an "ordinary and necessary" business expense of that taxable year. *Stice v. United States,* 540 F.2d 1077, 1081 (5th Cir.1976) (prepayment bore only slight relationship to goods received); *Mann v. Commissioner,* 483 F.2d at 680 (protection from future price fluctuations was valid business purpose); *Bonaire Development Co. v. Commissioner,* 76 T.C. 789, 795 (voluntary prepayment not "ordinary and necessary" expense). Having concluded that Section 263(c) does not supersede application of the procedural principles relating to the timing of deductions under Section 162(a), we likewise conclude that the business purpose factor is a valid consideration in determining the timing of prepaid IDC deductions. The tax court declined to apply the business purpose factor as an independent legal test, reaching its results on the basis of the other two factors. We need not decide whether a legitimate business purpose is an independent requirement because the tax court, in effect, applied the test independently and found no business purpose.

█ C. The third requirement of the test, that deduction of the prepayment must not result in a material distortion of income, is based upon 26 U.S.C. § 446(b) (1976 & Supp. V 1981). Section 446(b) provides in part that "if the method [of tax accounting] used [by the taxpayer] does not clearly reflect income, the computation of taxable income shall be made under such method as in the opinion of the Secretary or his delegate, does clearly reflect income." For example, under Section 446(b), the Commissioner possesses discretionary authority to disallow a particular deduction if the timing of the payment distorts income. *Burck v. Commissioner,* 533 F.2d 768, 773 (2d Cir.1976) (upholding Commissioner's authority under Treas.Reg. § 1.446–1(a) not only as to overall "method of accounting" but also as to any specific item). Thus, the Commissioner may disallow a deduction for a prepayment made in a taxable year without income to reflect it. *Clement v. United States,* 580 F.2d at 431; *Resnik v. Commissioner,* 555 F.2d 634, 636 (7th Cir.1977). Likewise, IDC that is "expensed," like any other allowable business expense, may be disallowed if it materially distorts income. *See* Klueger, *supra,* at 439.

█ Keller argues that Section 263(c) and its regulations supersede application of Section 446(b). The nub of his contention is that since Section 263(c) inherently permits a distortion of income by allowing a capital item to be "expensed," the Commissioner cannot alter the treatment of an IDC deduction to correct the distortion without vitiating the substance of Section 263(c). We agree with taxpayer, but only to a point. We believe that Section 446(b) should be given effect to the extent that it does not conflict with either the language or the purpose of Section 263(c). The purpose of Section 263(c), as the tax court dissent points out, is to encourage investment in exploratory gas and oil well drilling. (TC at 85) An immediate deduction for payments of IDC provides an incentive for taxpayers to invest in this extremely risky area. To allow an immediate deduction for a *prepayment* of IDC, however, would not necessarily achieve the result Congress sought. Taxpayers would reap an immediate tax benefit while the drilling that Congress sought to spur might not be commenced for years. We agree with the reasoning of the tax court majority:

> Congress did not specify *ad arbitrium* that taxpayers could take the IDC deduction when paid or mandate that prepaid IDC is immune from general tax accounting rules relating to the timing of expense deductions. . . . [T]he timing of a prepaid IDC deduction is a question of tax accounting. Absent express Congressional mandate we will not interpret section 263(c) to be broader than it appears on its face. IDC may be expensed. If expensed then the rules regulating the timing of expense deductions, including

the section 446(b) clear reflection requirements, must be applied.

(TC at 52). We conclude that Section 263(c) and the regulations thereunder do not support deduction of IDC to any degree beyond that required to effectuate congressional intent. Thus, while Section 263(c) authorizes an income distortion resulting from "expensing" an otherwise capital expenditure, in light of Section 446(b) the Commissioner may disallow a further distortion resulting from accelerating the IDC deduction to the taxable year of prepayment.

## II.

Having concluded that the tax court did not err in analyzing the timing of IDC deductions under the three-part test, we now examine the tax court's application of those three considerations to the facts in this case. We may not overturn the factual determinations of the tax court unless they are clearly erroneous, *i.e.*, unless on the entire evidence we are left with the definite and firm conviction that a mistake has been committed. *Pullman-Standard v. Swint,* 456 U.S. 273, 284 n. 14, 102 S.Ct. 1781, 1787 n. 14, 72 L.Ed.2d 66 (1982) (quoting *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *Yarlott v. Commissioner,* 717 F.2d 439, 441 (8th Cir.1983).

■ The tax court determined that prepaid IDC under (1) the footage and daywork drilling contracts and (2) the third party well servicing contracts constituted refundable deposits, not payments. The term "payment" requires that the transfer of money be "irretrievable." *Ernst v. Commissioner,* 32 T.C. at 186. A transfer pursuant to a binding contract is not sufficient. *Owens v. Commissioner,* 64 T.C. at 18 (1975), *aff'd in part and rev'd in part,* 568 F.2d 1233 (6th Cir.1977). Refundability is the crucial determination; if a taxpayer retains unilateral power to have the prepayment refunded, then the transfer is a nondeductible deposit. *Schenk v. Commissioner,* 686 F.2d at 319; *Mann v. Commissioner,* 483 F.2d at 678.

■ The footage and daywork drilling contracts expressly permitted the Drilling Partnership to terminate the contracts unilaterally and to be refunded the prepaid amounts. While the third party well servicing contracts made no explicit mention of the Drilling Partnership's power to cancel work unilaterally and to be refunded the prepayments, the tax court relied upon trial testimony from the relevant contractors to find that such power was understood. Having found that the Drilling Partnership could unilaterally regain the IDC prepaid, under those two types of contracts, the tax court concluded that the prepayments constituted refundable deposits, not payments. Taxpayer, convinced that the deposit-versus-payment analysis should not apply, chose not to "dignify such analysis" with a factual challenge. (Appellants' Reply Brief at 9). Instead, Keller asserts that his prepayments could no more be characterized as "deposits" than could those in various authorities that permitted deduction of prepaid IDC in the year of prepayment: *Pauley v. United States,* 11 AFTR 2d 955 (S.D. Cal.1963); Rev.Rul. 71–252, 1971–1 C.B. 146; Letter Ruling No. 8012060 (Dec. 27, 1979). In none of taxpayer's cited authorities, however, was the payment-versus-deposit issue ever raised; taxpayer's argument simply misses the mark. The deposit-versus-payment test does apply here though, and we conclude that the tax court's findings under that test were not clearly erroneous.

■ The tax court additionally found that no convincing business purpose supported the prepayment of IDC pursuant to the footage and daywork drilling contracts and the third party well servicing contracts. In making its findings, the tax court considered extensive trial testimony from numerous witnesses. W.A. Wackerly, who, as manager of drilling and production at Amarex, negotiated virtually all of the prepaid IDC contracts at issue in this case, was taxpayer's primary witness. Taxpayer's other two witnesses testified only as to turnkey drilling contracts, which are irrelevant to this appeal. Wackerly testified generally that prepayment of IDC was nec-

essary to lock in prices and to secure rig availability as to short-term leases. On specific inquiry, however, Wackerly was unable to recall instances where prepayment locked in prices, any lease deadline problems, or any difficulty obtaining a rig. Contractors who were called as witnesses for the Commissioner testified that their services would have been provided without requiring prepayment, that Amarex instigated prepayment of IDC, that only a very small percentage of their business was prepaid, and that they did not treat the prepayments as income until the services were rendered. In light of the evidence before the tax court, we cannot say that its finding of no convincing business purpose for prepayments under the footage and daywork drilling contracts and the third party well servicing contracts was clearly erroneous.

As to prepaid IDC in the form of "well charges" that the Drilling Partnership paid in a lump sum to Amarex Funds, the tax court did not rely upon the payment-versus-deposit analysis. Instead, the court denied a 1973 deduction for the prepaid well charges because a material distortion of income would result. As it had done in *Van Raden,* the tax court subordinated the business purpose inquiry to the material distortion analysis. If it were to find a convincing business purpose, the material distortion test would thereby be satisfied; if not, the court would inquire further as to other factors that might indicate error in the Commissioner's distortion determination.

The tax court concluded that there was no business purpose for prepaying the well charges. It found that prepayment did not ensure performance because the drilling agreement itself obligated Amarex Funds to perform. Similarly, the court found that prepayment was not made to lock in price; the record indicated that price had already been locked in.

Since no business purpose existed, the tax court proceeded to examine the Commissioner's determination of a material distortion of income. It observed that taxpayer had to shoulder a particularly heavy burden of proof in Section 446(b) cases, citing *Fort*

*Howard Paper Co. v. Commissioner,* 49 T.C. 275, 284 (1967) and *Commissioner v. Hansen,* 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959). The court found that a distortion would result if the well charges were deducted in 1973 because the charges were entirely for services to be performed in 1974 and beyond. The court also found that the amount of the deduction was material in size, both on an absolute scale and relative to the total amount paid to the partnership. The tax court observed, accurately we think, that there was "no motive for prepayment other than to accelerate the tax deductions." (TC at 61). In view of all the evidence, we are not left with the definite and firm conviction that the tax court erred in its factual determinations.

III.

Taxpayer argues that adoption of the three-part test in the context of prepaid IDC is inconsistent with the results of previous cases involving prepaid IDC. We agree that no court has heretofore adopted the entire test in the context of IDC; but no court has had occasion to do so. Furthermore, we do not believe the results under the three-part test to be inconsistent with previous prepaid IDC cases.

In *Burns v. Commissioner,* 78 T.C. 185 (1982), the tax court focused upon whether IDC had been "incurred" to determine its deductibility. The tax court dissent in the present case suggests that we should determine the timing of a prepaid IDC deduction in the same manner. The issue in *Burns,* however, was deductibility itself, not timing. Timing problems such as material distortion of income would remain unresolved if we were to look solely at whether a prepayment of IDC had been "incurred."

The tax court permitted deduction of prepaid IDC in the year of prepayment in *Stradlings Building Materials, Inc. v. Commissioner,* 76 T.C. 84 (1981) and *Levy v. Commissioner,* 44 T.C.M. 575 (CCH) (1982). In *Stradlings,* the tax court held that the taxpayer could deduct prepaid IDC in the year of prepayment even though the drilling services were not performed at all in

the subsequent year due to a breach. In *Levy*, the tax court similarly held that a prepaid IDC deduction need not be postponed until such payment is due under the contract, so long as a valid business reason supports prepayment. The three-part test would not necessarily change the result in either case; the three-part test requires neither actual drilling in the subsequent year nor postponement of the deduction until the contract calls for payment. In both *Stradlings* and *Levy*, the Commissioner opposed deduction of the prepayments solely on those two grounds.

In *Cheroff v. Commissioner*, 1980 T.C.M. ¶ 80,125 (P–H) (1980), the tax court permitted an accrual basis taxpayer to deduct prepaid IDC in the year prepaid even though the wells were not drilled until the next year. Because the Commissioner failed to raise the issues of business purpose and income distortion, the tax court did not address them. Instead, the tax court ruled for the taxpayer solely because the drilling contracts were sufficient to establish the fact of liability and the amount thereof in the year the IDC was prepaid. Although *Cheroff* is distinguishable because it involves interpretation of regulations governing accrual basis, not cash basis, taxpayers, its result would nonetheless be consistent with the three-part analysis because the prepayments were nonrefundable.

In *Pauley v. United States*, 11 AFTR 2d 955 (S.D.Cal.1963), the district court permitted current deduction of prepaid IDC because prepayment was made for a legitimate business purpose: the drilling company required it. Likewise, in *Dillingham v. United States*, 48 AFTR 2d 81–5815 (P–H) (W.D.Okla.1981), the court allowed the taxpayer to deduct prepaid IDC in the year of prepayment because the amounts were required under a binding contract for the drilling of specific wells; "the transaction was not a sham to merely permit plaintiff to control the timing of the deduction." *Id.* at 81–5819. Under the second requirement of the three-part test, the same "business purpose" inquiry is made. Additionally, since *Dillingham* involved turnkey IDC contracts, it is likely that the court, had it

applied the three-part test, would have reached the same result as did the *Keller* tax court with respect to turnkey IDC.

The result reached by the district court in *Barret v. United States*, 83–1 USTC ¶ 9186 (W.D.La.1982), does not undermine the validity of the three-part test. In *Barret*, the sole issue involved interpretation of the turnkey IDC contract to determine whether advance payment was required. Finally, the courts in *Scheidt v. Commissioner*, 44 TCM 1011 (CCH) (1982) and *Schiavenza v. United States*, 50 AFTR2d 82–5699 (N.D. Cal.1982), did not find it necessary to apply any part of the three-part test; in those cases the courts found that the money paid was not directed at IDC at all.

■ Taxpayer also argues that the three-part test proposed by the Commissioner represents an unfair shift of position from previous private letter rulings and Revenue Rulings upon which Keller properly relied. Rev.Rul. 80–71, 1980–1 C.B. 106; Rev.Rul. 71–579, 1971–2 C.B. 255; Rev.Rul. 71–252, 1971–1 C.B. 146; Letter Ruling No. 8232008 (Apr. 26, 1982); Letter Ruling No. 8226135 (Mar. 31, 1982); Letter Ruling No. 8111055 (Dec. 16, 1980); Letter Ruling No. 8012060 (Dec. 27, 1979). Assuming that the Commissioner's prior rulings are inconsistent, and even if Keller relied to his detriment upon those rulings, they do not preclude the Commissioner's present assertion of a legally sound position. *See Dixon v. United States*, 381 U.S. 68, 72–73, 85 S.Ct. 1301, 1304, 14 L.Ed.2d 223 (1965); *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183–84, 77 S.Ct. 707, 709–10, 1 L.Ed.2d 746 (1957); *Estate of Vitt v. United States*, 706 F.2d 871, 874 (8th Cir.1983). In any event, while they are entitled to some evidentiary weight, the Commissioner's private letter rulings and Revenue Rulings are not controlling authority and do not persuade this court in the present case. *Dixon*, 381 U.S. at 73, 85 S.Ct. at 1304; *Washington State Dairy Products Comm'n. v. United States*, 685 F.2d 298, 300 (9th Cir. 1982); *cf. Oetting v. United States*, 712 F.2d 358, 362 (8th Cir.1983) (Revenue Rul-

ing, while not controlling authority, was persuasive).

We conclude that the tax court did not err in analyzing the timing of IDC deductions under the three-part test. The tax court's application of those three considerations to the facts in this case was not clearly erroneous. Accordingly, we affirm the judgment of the tax court.