GUSTAVO GARCIA AND DOLORES S. GARCIA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Garcia v. Commissioner
Docket No. 5895-87
United States Tax Court
T.C. Memo 1989-496; 1989 Tax Ct. Memo LEXIS 499; 58 T.C.M. (CCH) 121; T.C.M. (RIA) 89496; September 11, 1989; As corrected September 14, 1989 Gustavo Garcia and Dolores S. Garcia, pro se. Jeffrey A. Sherman, for the respondent DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: [1] Respondent determined deficiencies in petitioners' Federal income tax liability as follows: Year
Deficiency
1981
$ 12,386.12
1982
2,378.00
After a concession by respondent, the sole issue for our decision is whether petitioners are entitled to a Schedule C "promotional" expense deduction in the amount of $ 30,000 for the taxable year 1981. Resolution of this issue is primarily dependent upon whether a $ 30,000 transfer by petitioners to a certain trust constitutes payment of a business expense. FINDINGS OF FACT This case was submitted on a Stipulation of Facts with exhibits attached and a second stipulation of facts pursuant to Rule 122 [2] and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. *501 Petitioners, Gustavo and Dolores S. Garcia, resided in Hacienda Heights, California, at the time their petition herein was filed. Petitioners timely filed joint Federal income tax returns on a cash basis for 1981 and 1982. Since 1967, Mr. Garcia (petitioner) has been employed full-time as a registered professional engineer. Petitioner has also been engaged in a part-time activity of writing movie screen treatments, various articles, and manuscripts for publication since 1970. One such manuscript, entitled "Legion of Roots," was accepted for publication. Prior to the publication of "Legion of Roots," petitioner's writings were offered but never accepted for publication. To date, royalty income from sales of "Legion of Roots" is $ 146.94. The parties have stipulated that petitioner was engaged in the trade or business of writing "Legion of Roots" and that the writing activity was engaged in for profit. "Legion of Roots" is an adult western and treasure hunt novel which was written by petitioner under the pen name of Don Zolo. The book, besides being a "fast moving Western Adventure," also contains certain clues which may lead the reader to the hidden locations of various *502 gold coins potentially worth over $ 30,000. As stated on the "Legion of Roots" paperback cover: * * * REAL TREASURE HUNT The thieves never got the gold they sought, but you could do better. Gold coins worth over $ 30,000 are hidden somewhere in North America. Uncovering clues to their location and hunting for them are part of the Legion of Roots adventure. The coins will belong to whomever gets them first. * * * In reality, petitioner hid several gold coins, including one unique gold coin, worth a total of approximately $ 500. However, attached to the unique gold coin is a letter instructing the finder to contact the publisher and exchange the unique gold coin for $ 30,000. The actual cost of the gold coins was not deducted as an expense by petitioner. During 1981, after petitioner completed "Legion of Roots," petitioner negotiated with Great Western Publishing Company ("Great Western") to publish the book. Since Great Western did not want to be obligated to pay the $ 30,000 cash prize to the ultimate finder of the unique gold coin and petitioner did not want to turn over unfettered control of the money to Great Western, petitioner agreed to deposit $ 30,000 *503 into a trust to be established by petitioner for that purpose. Petitioner later became dissatisfied with the financial terms of publication offered by Great Western. Petitioner instead contracted with General Means Corporation ("GM") for the publication of "Legion of Roots." GM has provided consulting engineering services to defense contractors since at least 1968. In 1981, GM expanded its activities to include publishing. Petitioner owns 90.566% of GM's stock. Pursuant to the Publication Agreement with GM, petitioner agreed to "set up a trust which will pay $ 30,000 for the coin(s) upon presentation of said coin(s) to the trustees. If the finder of the coin(s) elects to keep the coin(s), no payment will be made." On December 31, 1981, petitioner established a trust, entitled "Legion of Roots Trust" (the "Trust") pursuant to petitioner's Declaration of Trust (the "Declaration"). Petitioner was trustee of the trust. Petitioner, as trustor, designated $ 30,000 as representing the principal of the trust. The $ 30,000 was deposited into a Legion of Roots Cash Management Account at Merrill Lynch Pierce Fenner & Smith, Inc. Under Article 3 of the Declaration, petitioner, as *504 trustee, is given very broad powers to manage the trust property. Those powers include the purchase of securities, the determination of principal and income, and overall management of the trust property. The Declaration sets forth the rights petitioner reserves as trustor, including the following: ARTICLE 1. RIGHTS RESERVED TO THE TRUSTOR Power to Change or Revoke Trust Section 1.01. During their joint lives, the Trustor and the Trustor's spouse, Dolores Garcia, herein called "Trustor's Spouse," may, upon the occurence [sic] of any one of the contingencies enumerated in Section 1.02, by written notice signed by both of them and delivered to the Trustee: (a) Revoke or change the interest in any trust created or to be created pursuant to this Declaration of any Beneficiary named in this Declaration or in any amendment to this Declaration; * * * Contingencies Creating Power to Change or Revoke Trust Section 1.02. During their joint lives, the Trustor and Trustor's Spouse have the power to change or revoke this Declaration of Trust, if at any time and from time to time, any of the following events occur: (a) If the publisher of The Legion of Roots book defaults *505 in the payment of any royalties or any other payment due the Trustor; or (b) If the publisher fails to publish The Legion of Roots book within three years of the date of this Declaration of Trust; or (c) If the publisher breaches any term of the publishing contract, the declaration of such breach being in the sole discretion of the Trustor; or (d) If the publishing contract terminates; or (e) If the Legion of Roots treasure is not redeemed to the Trustee. Moreover, Article 2 of the Declaration provides: * * * Termination of Trust Section 2.03. If the principal of the trust has not been distributed by the trustee for want of a primary beneficiary (a finder of the Legion of Roots treasure) within ten years of the declaration of this trust, or if the trust is revoked, the Trustee shall distribute the entire principal to the income beneficiary, Daniel Garcia. The trust shall terminate at the time of this distribution. According to the Declaration, the income of the Trust is to be paid to petitioner's son, Daniel, for services performed by Daniel in the nature of certain enhancement, editing and proofreading the "Legion of Roots" manuscript prior to publication. *506 On their 1981 and 1982 Federal income tax returns, petitioners claimed as Schedule C business deductions amounts paid in connection with developing, promoting, and copyrighting the "Legion of Roots" manuscript under the business name of Gus Garcia. An attachment to petitioners' 1981 Federal income tax return indicated that the Schedule C "promotional" expense deduction claimed in the amount of $ 30,000 was "TO PROMOTE PUBLICATION AND SALE OF BOOK WRITTEN BY ME UNDER PEN NAME OF DON ZOLO." In his notice of deficiency, respondent disallowed all Schedule C deductions claimed by petitioners under the business name of Gus Garcia for 1981 and 1982. However, on brief, respondent conceded for purposes of this case that petitioners are entitled to deduct the various Schedule C expenses incurred as "publication costs," except the $ 30,000. Thus, the only deduction at issue in this case is the $ 30,000 "promotional" expense deduction petitioners claimed on their 1981 Federal income tax return. OPINION Section 461(a) provides as follows: (a) GENERAL RULE. -- The amount of any deduction or credit allowed by this subtitle shall be taken for the taxable year which is the proper taxable *507 year under the method of accounting used in computing taxable income. During the years in question, petitioners used the cash receipts and disbursements method of accounting in computing their taxable income. Under the cash receipts and disbursements method of accounting, amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid. Section 1.461-1(a)(1), Income Tax Regs. See section 7701(a)(25). Similarly, section 1.446-1(c)(1)(i), Income Tax Regs., provides that "Generally, under the cash receipts and disbursements method in the computation of taxable income . . . Expenditures are to be deducted for the taxable year in which actually made." Respondent asserts that the $ 30,000 transfer to the Trust constitutes neither an actual nor a constructive payment made by petitioners. On brief, petitioners contend that they "properly deducted $ 30,000 in their 1981 tax return as provided in I.R.C. Section 461 [because] petitioner-husband incurred a $ 30,000 non-contingent liability to General Means, Inc., when he signed the publishing contract in 1981." Petitioners used the cash receipts and disbursements *508 method to compute their taxable income during the year in question. Under that method, expenditures, as a general rule, are to be deducted for the taxable year in which actually made, not as petitioners contend, when "incurred." See section 1.446-1(c)(1)(i), Income Tax Regs. Moreover, as a general rule, a taxpayer using the cash receipts and disbursements method cannot deduct expenses before actual payment because there is no generally recognized doctrine of "constructive payment." Vander Poel, Francis & Co. v. Commissioner, 8 T.C. 407, 410 (1947). See also Clark Dredging Co. v. Commissioner, 23 B.T.A. 503 (1931), affd. 63 F.2d 527 (5th Cir. 1933). Nor can we find, based on the record before us, that the transfer of the $ 30,000 to the Trust constitutes an actual payment. Petitioner is a 90.566% shareholder in GM, the publisher of "Legion of Roots." Petitioner therefore controlled the publisher of "Legion of Roots" and effectively retained complete control over the contingencies creating the power to change or revoke the Trust as set forth in Section 1.02 of the Declaration. Because the power to revoke the Trust or to recapture the *509 $ 30,000 remains in petitioner's hands, petitioner never abandoned economic control over the funds and effectively never parted with the $ 30,000. Nor will petitioner's liability to pay become irrevocably established until somebody locates and presents the hidden unique gold coin to GM. Thus, it can hardly be said that the "payment" was absolute or that petitioners were irretrievably out of pocket the $ 30,000 amount transferred. Lillie v. Commissioner, 45 T.C. 54, 61 (1965), affd. 370 F.2d 562 (9th Cir. 1966). Furthermore, the record before us reveals a low volume of "Legion of Roots" book sales. Thus, even if petitioner never affirmatively exercised control over the Trust, the Trust corpus in all likelihood would be distributed to petitioner's son pursuant to Section 2.03 of the Declaration. For these reasons, we do not believe that a payment, actual, constructive, or otherwise, was made by virtue of petitioner's $ 30,000 transfer to the Trust. Moreover, even if we were to conclude that petitioner's transfer to the Trust was a payment, it was clearly an advance payment because no person had claimed the prize during the year in question. The *510 issue of current deductibility of advance payments by cash basis taxpayers has been the subject of considerable litigation. See Keller v. Commissioner, 79 T.C. 7 (1982), affd. 725 F.2d 1173 (8th Cir. 1984); Van Raden v. Commissioner, 71 T.C. 1083 (1979), affd. 650 F.2d 1046 (9th Cir. 1981); Lillie v. Commissioner, supra.
The above referenced cases all look primarily to whether an advance payment deduction would result in a material distortion of the taxpayer's income and whether the advance payment had a legitimate business purpose other than tax avoidance. Such a determination depends on the facts and circumstances of each case. See Lillie v. Commissioner, supra at 62. In the instant case, a $ 30,000 "promotional" expense current deduction for a prize which may never be discovered would unquestionably create a material distortion of petitioners' income. Furthermore, the record before us is devoid of any facts or circumstances which might suggest a legitimate business purpose behind petitioners' $ 30,000 transfer to the Trust. Since petitioner controlled GM, the transfer was *511 unnecessary. Thus, we find no substantial legitimate business purpose satisfying the distortion of income test. See Van Raden v. Commissioner, supra at 1106. We have considered petitioner's remaining contentions and find them to be without merit. In view of the foregoing, Decision will be entered Under Rule 155. Footnotes
1. This case was assigned and deemed submitted to Judge Drennen↩ by order dated April 10, 1989.
2. All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue.↩